UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **DANNY D. DRINKARD,** | ) |
| | ) |
| **Claimant,** | ) |
| | ) |
| vs. | ) Case No. CV-12-S-3567-NE |
| | ) |
| **CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM OPINION AND ORDER OF REMAND

Claimant, Danny D. Drinkard, commenced this action on October 10, 2012, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying Drinkard's claim for a period of disability, disability insurance, and supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be reversed, and this case should be remanded to the Commissioner for further consideration of the evidence.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*,

847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered the opinion of John McKinney, a certified rehabilitation counselor. Mr. McKinney performed an "assessment of [claimant's] future employability and ultimate vocational disability." on February 23, 2009, and he submitted a report of his assessment on July 10, 2009.[1] Mr. McKinney stated that he had reviewed all of the medical records he received from claimant's attorney.[2] He then made the following findings:

> Mr. Drinkard sustained a significant low back injury during the course of his employment with Birmingham Toledo, Inc. in May, 2008, following which he subsequently underwent a posterior fusion of the lumbar spine. Despite the aggressive medical intervention provided, he continues to suffer chronic pain and marked functional limitations.
>
> Based on the work restrictions advised, Mr. Drinkard is precluded from resuming future work activities above a limited Medium exertional level with the need to alternate positions and avoid certain work postures. Restricted as such, he would be unable to resume his prior occupation and has attained no job skills which are readily transferable to accommodating work activities. A comparison of his work capabilities pre and post-injury reveals that he has suffered a loss of access to employment opportunities of some 58%.
>
> In addition, he will likely incur an approximate 50% diminution

---

[1] Tr. 339 (alteration supplied).
[2] *Id.*

in future earning capacity.

>Therefore, a vocational disability rating of 54% is considered appropriate based on a combination of the aforementioned factors.

>However, Mr. Drinkard reports that he continues to suffer chronic pain symptoms of moderately severe to severe intensity necessitating that he lie down for significant portions of the day. Pain of such severity would prevent an individual from being able to consistently perform or maintain any type of competitive employment. As previously noted, he is desirous of referral to a pain management clinic in an attempt to obtain treatment that may better control his persistent symptoms and improve his overall functional abilities.[3]

Mr. McKinney noted that he had based his assessment in part on an independent medical evaluation performed by Dr. Eric Beck on March 23, 2009.[4] Dr. Beck

>assigned a 7% whole body permanent physical impairment rating. With respect to work restrictions, Dr. Beck advised the following:
>
>- Lifting from floor to knuckle level or pushing/pulling of 50 pounds occasionally and 30 pounds frequently
>
>- Occasional bending, stooping, or twisting
>
>- Sitting for 45 minute periods with total sitting time restricted during an 8-hour day and the required availability to change positions for 5-10 minutes
>
>- Standing/walking for up to 30 minutes at a time (4 hours total during a work day) and the opportunity to change positions for 5-10 minutes [sic] periods
>
>- Occasional overhead work.[5]

---

[3] Tr. 342.

[4] Tr. 341.

[5] Tr. 341 (alteration supplied). *See also* Tr. 311. As a vocational rehabilitation counselor,

The ALJ assigned "significant weight" to Mr. McKinney's assessment.[6] Based on that assessment, as well as other medical evidence of record, the ALJ found that claimant retained

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant would be limited to lifting up to 15 pounds occasionally; lifting or carrying up to 10 pounds frequently; standing or walking for 6 hours in an 8 hour workday; sitting for 6 hours in an 8 hour workday; can only occasionally push/pull with upper extremities; occasionally operate foot controls (lower extremities) bilaterally. The claimant could never climb ladders, ropes and scaffolds; occasionally climb stairs, no more than 4-6 at one time. The claimant can occasionally balance with the assistance of a hand-held assistive device to walk on uneven surfaces or prolonged walking. While using the cane, the contra-lateral upper extremity can be used to lift or carry (or both) up to the exertional limits as described. He can occasionally stoop. The claimant could not crouch, kneel or crawl. He would be precluded from repetitive rotation, flexion, or extension of the trunk. He would need to avoid even moderate exposure to extreme cold, heat, excessive vibration, and exposure to hazards (e.g., use of moving machinery and exposure to unprotected heights). He must avoid even moderate exposure to uneven terrain. The claimant would be

---

Mr. McKinney is not an "acceptable medical source" under Social Security regulations. *See* 20 C.F.R. §§ 404.1502, 404.1513(a), 404.1527, 416.902, 416.913(a), & 416.927. Even so, the regulations also provide that the Commissioner can rely upon evidence from non-medical sources, as well as from medical sources that are not "acceptable medical sources." 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ should state fully explain the weight afforded any evidence from such "other sources." SSR 06-03p ("Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.").

[6] Tr. 30.

limited to simple, routine and repetitive tasks.[7]

After obtaining vocational expert testimony, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy . . . ."[8] Thus, claimant was found to *not* be under a disability, as defined by the Social Security Act.[9]

Claimant argues that the ALJ's opinion is internally inconsistent with regard to its treatment of Mr. McKinney's assessment. Because the ALJ assigned Mr. McKinney's opinion "significant weight," the court would expect the ALJ's residual functional capacity finding to at least mostly mirror Mr. McKinney's assessment, but it does not. Mr. McKinney found that claimant "attained no job skills which are readily transferable to accommodating work activities," but the ALJ found that claimant had "acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy . . . ."[10] Mr. McKinney found that claimant could not perform work above a *medium* exertional level, but the ALJ found that claimant was capable of performing only a

---

[7] Tr. 26.
[8] Tr. 32 (alteration supplied).
[9] Tr. 32-33.
[10] Tr. 32.

limited range of *light* work. Mr. McKinney found that claimant needed to alternate work positions, but the ALJ did not include any limitation of a sit-stand option in his residual functional capacity finding. The ALJ did find that claimant was limited to a total of six hours of sitting and six hours of combined standing and walking during a workday, but that is not the same thing as needing to alternate postural positions throughout the day. Further, Mr. McKinney stated that claimant experienced pain to such an extent that would prevent him from being able to maintain employment on a consistent basis, but the ALJ did not mention that finding in his administrative decision. In some ways, the ALJ's findings were more restrictive than Mr. McKinney's, but in other ways, the converse is true.

In summary, it simply is not possible to determine which aspects of Mr. McKinney's assessment actually were relied upon by the ALJ, and which were not. There must be clarification on that issue, because some of Mr. McKinney's findings could support a residual functional capacity of sedentary work, which would render claimant disabled under the Guidelines. Remand is warranted for the ALJ to give further consideration to Mr. McKinney's assessment, clarify how much weight was afforded to each part of the assessment, and reevaluate claimant's residual functional capacity, if necessary, for consistency with the assessment.

Based on the foregoing, the decision of the Commissioner is reversed, and this

action is REMANDED to the Commissioner of the Social Security Administration for further proceedings consistent with this memorandum opinion and order.

The Clerk of Court is directed to close this file.

DONE this 4th day of September, 2013.

_____
United States District Judge